NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0115n.06

No. 11-4076

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Jan 31, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| THE SCRAP YARD, LLC, ALLEN YOUNGMAN, AND JACOB YOUNGMAN, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | On Appeal from the United States District Court for the Northern District of Ohio |
| CITY OF CLEVELAND, FRANK JACKSON, THE MAYOR OF CLEVELAND, AND DAVID COOPER, THE CHIEF BUILDING OFFICIAL FOR CLEVELAND, | ) ) ) ) ) | |
| Defendants-Appellees. | ) | |

Before:     BOGGS and WHITE, Circuit Judges; BLACK, District Judge.[*]

BOGGS, Circuit Judge.  This appeal arises from a long-standing dispute between plaintiffs and the City of Cleveland over whether The Scrap Yard, LLC conforms with the zoning code.  After lengthy litigation in state court, plaintiffs filed a complaint in federal district court alleging that, through seeking "code compliance," defendants violated their constitutional rights and committed torts under state law.  The district court granted defendants' motion to dismiss.  We affirm the judgment of the district court.

---

[*] The Honorable Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation.

No. 11-4076
*The Scrap Yard, LLC, et al. v. City of Cleveland, et al.*

**I**

We adopt the thorough statements of fact as provided in the Report and Recommendation

(R&R) of United States Magistrate Judge Nancy A. Vecchiarelli.

> On April 25, 2006 City of Cleveland filed a complaint for injunctive and other relief in Cleveland Municipal Housing Court against Cleveland Scrap and against Ian J. Abrams ("Abrams"), then-owner of the Scrap Yard and owner of the land at 3018 East 55th Street, Cleveland, Ohio upon which the Scrap Yard operated as a tenant ("the site"). The complaint alleged various zoning code violations against Cleveland Scrap and Abrams, including failing to acquire a certificate of occupancy, expanding scrap metal processing unlawfully, failing to obtain a license, storing materials on the site without necessary authorization, piling materials in excess of the legal height, erecting structures on the property without a permit, and fencing portions of the site in violation of ordinance. The city sought a preliminary and permanent injunction against operations at the site.
>
> In June 2008, the parties submitted an agreed judgment entry to the Housing Court, one which provided that Abrams would seek certain variances at the site, would continue to operate his scrap business pending the hearing with the board of zoning appeals, and would keep portions of the site and the nearby road clear of trash and debris while the case was pending at the Housing Court. After a hearing, the board of zoning appeals rejected Abrams'[s] request for variances on July 17, 2006.
>
> On September 11, 2006, the Cleveland Housing Court held a hearing on the city's motion for a preliminary injunction. On September 14, 2006, the magistrate judge issued his recommendations, and the Housing Court adopted them the same day. Cleveland Scrap alleges that it was not given an opportunity to file objections to the magistrate judge's report before the court adopted it. The Housing Court entered a judgment and order finding that Cleveland Scrap was illegally conducting operations on the premises and preliminarily enjoined Cleveland Scrap from conducting those operations.
>
> On September 19, 2006, Abrams and Cleveland Scrap appealed the Housing Court's preliminary injunction. The state appellate court eventually dismissed sua sponte Cleveland Scrap's appeal of the preliminary injunction as not being a final appealable order. On March 21, 2007, Cleveland filed in the Housing Court a motion for Cleveland Scrap to show cause why it should not be held in contempt for violating the court's September 14, 2006 order. The Housing Court held a hearing on this motion on April 23, 2007. On April 30, 2007, the court found Cleveland Scrap in

- 2 -

contempt of the court's order, but the court also set forth certain conditions that, if met, would allow Cleveland Scrap to "purge" itself of the contempt citation. Despite attempts by Cleveland Scrap to meet those conditions, the Housing Court found Cleveland Scrap in contempt on May 17, 2007 and imposed sanctions against the company. The sanctions included a fine of $10,000 for each delivery of scrap received. As Cleveland Scrap received about 100 scrap deliveries a day, the sanctions potentially subjected Cleveland Scrap to a fine of about $1,000,000 per day.

Cleveland Scrap filed a timely notice of appeal of the contempt citation on May 23, 2007. That same day, it also filed in the Housing Court a motion to stay the proceedings and set bond pending the stay. The Housing Court imposed bond of $8,100,000. When Cleveland Scrap failed to post bond, the court ordered the bailiffs to secure the gates of the site, thus prohibiting deliveries to Cleveland Scrap and preventing it from conducting further operations.

On September 11, 2008, the state appellate court, in an opinion issued upon reconsideration, reversed the Housing Court. *Cleveland v. Abrams* ("*Cleveland Scrap II*"), 2008 WL 4174974 (Ohio App. Sept. 11, 2008). It found that the Housing Court's preliminary injunction was vague and unclear, thus rendering the contempt citation invalid; that the site was exempt from city ordinances regulating aesthetics and the height of junk; that Cleveland Scrap could not be held in contempt for conducting unauthorized operations on any portion of the property because its permit authorized operations on all portions of the property; and that Cleveland Scrap was not required to obtain a certificate of occupancy. The state appellate court (1) invalidated the injunction and the contempt order and (2) remanded the case to the Housing Court (a) to conduct a hearing to act in compliance with the appellate court's decision and (b) to further review the legal merits underlying the first preliminary injunction order.

While Cleveland Scrap's appeal was pending in the state appellate court, the Housing Court held a trial on the merits of the request for a permanent injunction on August 12-14, 2008. After hearing the evidence produced at that trial, the Housing Court issued a permanent injunction against Cleveland Scrap's doing business at the site.

Cleveland Scrap timely appealed issuance of the permanent injunction. On February 25, 2010, the state appellate court reversed the Housing Court and vacated the injunction. The appellate court found that the Housing Court had jurisdiction over the merits of the case while Cleveland Scrap's appeal of the preliminary injunction was pending in the appellate court. The state appellate court found, nevertheless, that the Housing Court's permanent injunction conflicted with the law of the case as

established by the state appellate court's ruling in *Cleveland Scrap II*, filed a month after the Housing Court issued its permanent injunction. *See Cleveland v. Abrams* ("*Cleveland Scrap III*"), 2010 WL 664144 (Ohio App. Feb. 25, 2010). The state appellate court also entered judgment in favor of Cleveland Scrap and Abrams on the complaint. On May 31, 2007, while the state actions were proceedings, Cleveland Scrap filed in this court a complaint for injunctive and other relief. *Scrap Yard, LLC v. City of Cleveland*, et al., Case No. 1:07-cv-1608 (N.D. Ohio 2007).

The complaint asserted seven causes of action: (1) a claim pursuant to 42 U.S.C. § 1983 ("§ 1983") alleging deprivation of due process for the City of Cleveland's failure to follow its own ordinance; (2) a § 1983 claim alleging deprivation of substantive due process; (3) a § 1983 claim alleging that Cleveland Codified Ordinance § 347.06(d) regulating the "Height of Junk" is unconstitutionally vague; (4) a § 1983 claim alleging that the Cleveland Codified Ordinance § 676.13(a) regulating "Screening of Junk Yards" is unconstitutionally vague; (5) a federal takings claim alleging the City of Cleveland's enforcement of its ordinances failed to advance a legitimate government interest and therefore amounted to an unlawful taking of private property; (6) a state law claim alleging tortious interference with property rights; and (7) a state law claim alleging the City of Cleveland's negligence to adequately train, supervise, and discipline the behavior of its employees. Cleveland Scrap also moved for a temporary restraining order to (1) enjoin the city from enforcing, or attempting to enforce or mandate the ordinances of the City of Cleveland which require the plaintiff to cease its operation; and (2) allow the plaintiff to continue its normal and usual business operations. On October 28, 2010, the court dismissed the complaint without prejudice pursuant to *Younger v. Harris*, 401 U.S. 37 (1991). In issuing its decision, the court observed, "[T]here is a two-year statute of limitations on each of the plaintiff's claims. As the statute of limitations start to toll from the date of the alleged injury, in this case 17 May 2007, the Court concludes that a dismissal will not give rise to statute of limitations issues." Order and Opinion, June 1, 2007, Doc. No. 9, p. 6.

Cleveland Scrap, A. Youngman, and J. Youngman filed the present case on December 30, 2010. Plaintiffs assert six claims in their complaint: (1) a § 1983 claim alleging a violation of due process; (2) a § 1983 claim alleging deprivations of liberty health, safety, privacy, and welfare; (3) an unlawful taking of property;[4] (4) a state law claim for tortious interference with property rights; (5) a state law claim for negligence; and (6) a state law claim for frivolous conduct.

The district court referred the case to Magistrate Judge Vecchiarelli. The magistrate judge's

R&R recommended that the entire case be dismissed. Judge Wells adopted the R&R and entered

an order dismissing plaintiffs' complaint with prejudice as to counts one, two, four, five, and six, and dismissing the takings claim (count three) without prejudice, finding that it was not yet ripe.

On appeal, plaintiffs raise seven arguments. First, that the district court erred by applying a heightened pleading standard. Second, that the district court erred in dismissing plaintiffs' complaint. Third, that the City of Cleveland violated plaintiffs' § 1983 rights when defendants Cooper and Jackson sought to enforce "code compliance" against plaintiffs. Fourth, that Allen and Jacob Youngman have standing to bring suit in their individual capacities. Fifth, that plaintiffs were not required to file a separate state mandamus action for the unlawful taking of their private property. Sixth, that the district court erred in finding that the City of Cleveland was immune from plaintiffs' state-law claims. Seventh, that plaintiffs should have been given an opportunity to amend their complaint.

**II**

The complaint makes absolutely no allegation as to what Frank Jackson, the Mayor of the City of Cleveland, or David Cooper, the Chief Building Official, may have done to deprive plaintiffs of any rights. Rather, the complaint merely identifies who these people are, states that they acted under color of state law, and that their actions "violated clearly established federal law and recovery based upon the facts set forth in this complaint is not defeated by absolute or qualified immunity."

Plaintiffs claim that it is unreasonable for the district court to have expected them to set forth specific statements, actions, and orders of Cooper and Jackson. But plaintiffs did not set forth *any* actions that Cooper or Jackson took. "[D]amage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what

*each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008). In this case, there are no details of what either did beyond general allegations that both acted in their roles as the Mayor of Cleveland and the Chief Building Official, respectively. There is nothing more. The district court properly dismissed Jackson and Cooper from this suit.

**III**

The district court did not apply a heightened pleading standard and did not err in dismissing the complaint. The district court properly set out the framework under *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Following *Twombly* and *Iqbal,* "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plaintiffs' complaint is threadbare, conclusory, and not plausible on its face.

Count one alleged a violation of civil rights pursuant to 42 U.S.C. § 1983 and an unspecified deprivation of rights to due process of law. This count asserted vague claims that the City of Cleveland "sought 'code compliance'" notwithstanding the fact that plaintiffs' property was "exempt from certain other restrictions." Plaintiffs allege that this "seeking [of] 'code compliance,' was the proximate cause of the violation of Plaintiffs' federally protected rights." It is unclear how a city seeking to ensure that a property complied with a zoning code, without any more details, violates civil rights.

Count two alleged a violation of civil rights pursuant to 42 U.S.C. § 1983 and a "deprivation of right to liberty, health, safety, privacy and welfare." This count makes no specific claims. Rather, it only states:

> The Defendants, acted under color of law to deprive the Plaintiffs of their civil rights, namely, their right to life, health, safety, privacy and welfare, which rights are guaranteed to them and secured under the United States and Ohio Constitutions. Such conduct was the proximate cause of the violation of Plaintiffs' federally protected rights.

Plaintiffs do not specify what the improper conduct was or precisely what rights were violated.

Count three alleged an unlawful taking of property. Plaintiffs assert: "As a direct and proximate result of the actions of the Defendants, the Defendants have, in fact, unlawfully taken the Plaintiffs' property interests, causing irreparable harm for which compensation must be paid, and the Plaintiffs have sustained the damages and losses set forth hereafter." This claim, which was dismissed without prejudice, is not yet ripe for federal review. *See infra* Part V.

Count four alleged tortious interference with property rights. Plaintiffs assert that the "aforementioned tortious acts of Defendants has [*sic*] resulted in significant compensatory and financial damage including but not limited to the loss of their business operations located on the property." The complaint does not specify which acts are tortious or how the actions of defendants entitle them to any relief.

Count five alleges negligence:

> The failure of the Defendants to adequately train, supervise, discipline or in any other way control the behavior of their employees in the exercise of their functions, and their failure to correctly enforce the law of the land, is evidence of the reckless lack of cautious regard for the public, including the Plaintiffs, and exhibited a lack of that degree of due care which prudent and reasonable individuals would show in executing the duties of the Defendants.

Plaintiffs do not specify in what way training was lacking, or how the failure to train may have resulted in damage to plaintiffs.

Finally, count six alleges the tort of "frivolous conduct" as defined by Ohio Rev. Code § 2323.51(A)(2). Citing the fact that their non-conforming property use was allegedly grandfathered, plaintiffs state that "it is clear that the City actions were frivolous." This conclusory statement merely parrots the relevant statute and provides this court with no inkling as to how entitlement to relief could be demonstrated.[1]

Contrary to plaintiffs' representations, the district court did not require them to set forth every relevant factual detail. In fact, plaintiffs failed to set forth *any* relevant factual details. With respect to counts one, two, four, five, and six, this court cannot infer that plaintiffs have "show[n]" entitlement to relief. Fed. R. Civ. P. 8(a)(2). The district court did not err in dismissing counts one, two, four, five, and six with prejudice. Count three was not ripe, *see infra* Part V, and the district court properly dismissed it without prejudice.

## IV

The district court held that Allen and Jacob Youngman lacked standing to bring this action. The complaint only mentions the Youngmans twice. First, it states: "Plaintiff Allen Youngman is the majority owner and President of Cleveland Scrap and has personally been damaged to an undetermined extent by the illegal actions of the Defendants." Second, it alleges: "Jacob Youngman

---

[1] In addition, Ohio Rev. Code § 2323.51(A)(2) "does not create a separate cause of action for frivolous conduct." *Shaver v. Wolske & Blue*, 742 N.E.2d 164, 178 (Ohio Ct. App. 2000). Instead, the statute provides that to recover fees and costs, a party must make a motion in the civil action or appeal "not more than thirty days after the entry of final judgment." Ohio Rev. Code § 2323.51(B)(1). Thus, if Plaintiffs wished to recover under this statute for conduct that occurred in the state court zoning proceedings, they should have sought relief in those proceedings via motion within 30 days after the entry of final judgment, not as a separate cause of action in a subsequent lawsuit.

is the minority shareholder and Vice-President of Cleveland Scrap, in charge of day to day operations, and has been damaged to an undetermined extent by the illegal actions of Defendants." However, shareholders, individually named, cannot maintain an action to redress injuries to their corporation. *Canderm Pharmacal, Ltd. v. Elder Pharm., Inc.*, 862 F.2d 597, 602–03 (6th Cir. 1988).

On appeal, Allen and Jacob Youngman assert that they "suffered a separate and distinct injury based upon their personally guaranteeing the debts of the business." Appellant Br. at 24. This assertion is not found in the complaint and is not properly before this court. Accordingly, the district court correctly found that Allen and Jacob Youngman lack standing.

**V**

Plaintiffs concede that they never filed an action in state court seeking just compensation for their takings claim before filing their complaint in district court. The district court held that this action was not ripe for federal review. *See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985). It seems that after filing their notice of appeal in this case, plaintiffs filed a mandamus action, Appellant Br. at 25–26, the proper procedure under Ohio law for seeking just compensation for a taking, *see Silver v. Franklin Twp.*, 966 F.2d 1031, 1035 (6th Cir. 1992). This information was not before the district court when it determined that the takings claim was not ripe. Because the district court dismissed the takings claim without prejudice, plaintiffs may, subject to the limitations of *Williamson County*, file the takings claim in district court once all state remedies are exhausted.

**VI**

The district court held that the City of Cleveland was immune from plaintiffs' state-law tort claims pursuant to Ohio Rev. Code § 2744. On appeal, plaintiffs counter that the City's efforts to seek "code compliance" were really an attempt to "put Appellants out of business." Plaintiffs argue that these actions, taken "with a malicious purpose, in bad faith, and in a wanton and reckless manner," constituted a "proprietary function" that would not be entitled to the immunity afforded to a "governmental function." This assertion about the City's intentionally aiming to put plaintiffs out of business is not found in the complaint and will not be considered for the first time on appeal.

In Ohio, "[t]he provision or nonprovision of inspection services of all types, including . . . *zoning* . . . and the taking of actions in connection with those types of codes" is a "governmental function." Ohio Rev. Code § 2744.01(C)(2)(p) (emphasis added). Statutory immunity to certain state-law claims extends to these actions. *Id*. § 2744.02. Thus, seeking compliance with the zoning code is a governmental function under Ohio law. Plaintiffs point to no applicable exception to this statute, and their argument that the city engaged in a "proprietary function" is incorrect under state law.

The district court did not err in holding that Cleveland is immune from suits brought under state tort law.

**VII**

In plaintiffs' objections to the magistrate judge's R&R, they requested for the first time that if the court granted the motion to dismiss, they "be given leave to amend their Complaint." This request did not mention any particular grounds on which leave to amend should be granted, aside

from plaintiffs' representation that "[p]laintiffs have valid claims which are entitled to redress." The district court declined to give them leave to amend, both because plaintiffs submitted a "bare request . . . without any indication of the particular grounds on which amendment is sought," and because "further amendment would be futile, as the Complaint's legal deficiencies could not be repaired through amendment." Plaintiffs provided no specific grounds on which the deficiencies in their complaint could be remedied. On appeal, plaintiffs still have not explained what they would claim in an amended complaint beyond additional vague allegations of wrongdoing. Plaintiffs only requested to amend their complaint, in a single sentence, as an alternative argument after the magistrate judge recommended that their complaint be dismissed. This occurred nearly nine months after the initial complaint was filed. Under these circumstances, the district court did not abuse its discretion in denying this request to amend the complaint.

**VIII**

The judgment of the district court is AFFIRMED.