[Cite as *Morelia Group-DE, L.L.C. v. Weidman*, 2023-Ohio-386.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| MORELIA GROUP-DE, LLC, | : | APPEAL NO. C-220153 |
|  |  | TRIAL NO.   A-2101260 |
| Plaintiff-Appellee, | : |  |
|  | : | *O P I N I O N.* |
| vs. |  |  |
|  | : |  |
| THOMAS WEIDMAN, | : |  |
| Defendant-Appellant. | : |  |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: February 10, 2023

*Taft Stettinius & Hollister LLP*, *Medora M. Akers*, *Russell S. Sayre* and *Chad R. Ziepfel*, for Plaintiff-Appellee,

*Green & Green, Jared A. Wagner* and *Jane M. Lynch*, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Defendant-appellant Thomas Weidman, a trustee for Sycamore Township, appeals the trial court's denial of his Civ.R. 12(C) motion for judgment on the pleadings. Plaintiff-appellee Morelia Group-DE, LLC, ("Morelia Group") filed suit against Weidman in his individual capacity, claiming that Weidman tortiously interfered with a business relationship between Morelia Group and the township. Weidman sought to have the suit dismissed on the grounds that the challenged actions fall within R.C. 2744.03(A)(6), the state's immunity provision for employees of a political subdivision. The trial court denied Weidman's motion. For the reasons set forth below, we affirm the judgment of the trial court.

## I. Procedural History

{¶2} In April 2021, Morelia Group filed suit against Weidman for tortious interference with a business relationship. In his answer, Weidman counterclaimed for defamation, intentional infliction of emotional distress, and false light invasion of privacy. After a series of motions, the trial court granted Morelia Group's motion to dismiss Weidman's counterclaims on the basis that the claims were time-barred by the statute of limitations. The trial court then denied Weidman's motion for judgment on the pleadings, concluding that the complaint sets forth adequate facts to survive an immunity challenge at the pleading stage. This timely appeal followed.

## II. Factual History

{¶3} Morelia Group is a commercial real estate developer led by founder and CEO Christopher Hildebrant. Thomas Weidman has been a member of the Sycamore Township Board of Trustees since 2006. Hildebrant and Weidman have known each other since as early as 2005 through Hildebrant's business dealings in and around

Sycamore Township.

{¶4} According to Morelia Group, beginning in 2007, Hildebrant attempted to acquire several adjacent parcels of land near the intersection of Montgomery Road and Kenwood Road in Sycamore Township for commercial development (the "Development Property"). The parcels were owned by various separate owners, and Hildebrant had negotiated to acquire all but one before the entire plan fell through due to the 2008 economic downturn.

{¶5} In 2009, Hildebrant learned from Weidman that the township sought to buy the Development Property with the same goal of consolidating ownership and using the combined property for commercial development. According to Morelia Group, Weidman sought Hildebrant's assistance in negotiating the purchase of the various parcels for the Township.

{¶6} In a series of transactions from 2009 through 2011, Hildebrant successfully negotiated various real estate transactions at Weidman's request. According to Morelia Group, Hildebrant was to be paid consulting fees in the various arrangements. Morelia Group claims that in each transaction, Weidman demanded to be paid a kickback from the consulting fee that Hildebrant collected. Over the course of these transactions, Hildebrant feigned agreement that he would pay Weidman the kickback. However, Morelia Group claims that every time Weidman asked Hildebrant for payment, Hildebrant made excuses as to why he could not pay the expected kickback, such as not having received the promised consulting fee.

{¶7} Morelia Group claims that in early 2012, Weidman learned of Hildebrant's deception regarding the nonpayment of the kickbacks. As a result, Weidman threatened to withhold zoning approval for Hildebrant's latest deal unless

3

Hildebrant made good on all of the past kickbacks. Hildebrant continued to refuse payment. Morelia Group claims that Weidman subsequently retaliated against Hildebrant by using his position as a township trustee to have a concrete median erected on the road in front of the subject property, diverting customers and economically damaging the businesses located on the property.

{¶8}    Between 2010 and 2019, the township bought or contracted to buy all of the parcels constituting the Development Property for a combined total of nearly $11 million. Morelia Group only describes Hildebrant's involvement in transactions prior to 2012, implying that he was no longer involved in negotiating purchases on behalf of the township after that time.

{¶9}    In the fall of 2019, Morelia Group offered to purchase the Development Property from Sycamore Township. Hildebrant and Morelia Group's architect made a formal presentation on Morelia Group's offer and proposed site plan at the October 3, 2019 Sycamore Township Board of Trustees meeting.

{¶10}   The minutes of the meeting reflect that the township law director had various concerns with the submitted contract, including: (1) the township did not yet own part of the property Morelia Group sought to buy; (2) state law requires the township to make a determination about what part of the property is needed for a public purpose before selling, and no study of that question had been started since the township did not yet own the entire property; and (3) the contract would require the township to approve certain zoning changes, which could not be done through the contract. The law director also noted that Morelia Group's offer of $10,820,000 is equal to what the township paid to acquire the property, and that an appraisal of the land was likely to show that the entire property sold together was worth more than the

4

individual parcels.[1]

{¶11} The minutes also show that Weidman repeated the concerns raised by the law director. Weidman further suggested that the process for selling the land should be more transparent, including a request-for-proposals process that would invite multiple developers to submit proposals for the site in accordance with an access-management plan to be specified by the township.

{¶12} In its complaint, Morelia Group alleges that Weidman's objections to Morelia Group's proposal were pretextual and that Weidman had acted "with malicious purpose, in bad faith, and/or in a wanton or reckless manner" to prevent Morelia Group from contracting with the township. Morelia Group claims that Weidman harbors personal animus against Hildebrant because of Hildebrant's prior refusal to pay kickbacks to Weidman, and that this personal animus was the true motivation behind Weidman's objections to Morelia Group's offer. Further, Morelia Group claims that the other two members of the township board of trustees viewed the offer favorably, and that but for Weidman's objection, the board would have voted to accept the offer.

### III. Analysis

{¶13} In his sole assignment of error, Weidman claims that the pleadings and evidence properly before the court show that Weidman is entitled to the benefit of the statutory immunity conferred upon employees of political subdivisions under R.C. 2477.03(A)(6). Morelia Group counters that its complaint is sufficient to withstand Weidman's motion for judgment on the pleadings on the basis that, if proven, its claims are sufficient to overcome Weidman's immunity. We agree that Morelia

---

[1] Morelia Group avers in its complaint that it offered $10,825,000 for the Development Property. For the purposes of this appeal, the discrepancy is immaterial.

Group's complaint is sufficient to overcome Weidman's immunity at this stage. Accordingly, we affirm the trial court's denial of Weidman's motion for judgment on the pleadings.

### A. *Jurisdiction and Standard of Review*

{¶14} Our jurisdiction over this interlocutory appeal is based on the trial court's denial of civil immunity to Weidman as an employee of a political subdivision. *See* R.C. 2744.02(C). Thus, our review is limited to the question of Weidman's immunity. *Lamar Advantage GP Co., LLC v. City of Cincinnati*, 2021-Ohio-2422, 176 N.E.3d 81, ¶ 2 (1st Dist.). Issues pertaining to political-subdivision immunity under R.C. Chapter 2744 present questions of law, which we review de novo. *Williams v. City of Cincinnati*, 1st Dist. Hamilton No. C-210146, 2021-Ohio-3801, ¶ 4.

{¶15} Weidman appeals from the trial court's denial of his motion for judgment on the pleadings under Civ.R. 12(C). We review the trial court's judgment on the pleadings de novo. *Vandercar v. Port of Greater Cincinnati Dev. Auth.*, 2022-Ohio-3148, 196 N.E.3d 878, ¶ 40 (1st Dist.). "Dismissal on a Civ.R. 12(C) motion for judgment on the pleadings is proper when a court construes as true the material allegations in the complaint, along with all reasonable inferences to be drawn therefrom, and finds, beyond doubt, that the plaintiff can prove no set of facts that would entitle the plaintiff to relief." *Id.*, citing *Reister v. Gardner*, 164 Ohio St.3d 546, 2020-Ohio-5484, 174 N.E.3d 713, ¶ 17.

{¶16} As recently noted by the Supreme Court, "Ohio is a notice-pleading state." *Maternal Grandmother, Admr. v. Hamilton Cty. Dept. of Job & Family Servs.*, 167 Ohio St.3d 390, 2021-Ohio-4096, 193 N.E.3d 536, ¶ 10. To counter a defendant's anticipated claim of political-subdivision-employee immunity under R.C.

2744.03(A)(6)(b), "notice pleading suffices and the plaintiff may not be held to a heightened pleading standard or expected to plead the factual circumstances surrounding an allegation of wanton or reckless behavior with particularity." *Id.* at ¶ 11. We apply the same pleading standard to allegations under R.C. 2744.03(A)(6)(b) of malicious purpose or bad faith. *See id.*; Civ.R. 9(B). Thus, to survive Weidman's motion for judgment on the pleadings, Morelia Group need only put Weidman on notice that an exception to his statutory immunity "might apply." *Maternal Grandmother* at ¶ 15. Unless the allegations of Morelia Group's complaint are so deficient that "no set of facts" proving those allegations could pierce Weidman's statutory immunity, dismissal on the pleadings is inappropriate. *Id.*

### B. *Minutes of the October 3 Trustee Meeting*

**{¶17}** Before we address the merits of Weidman's appeal, we must determine what materials are properly before the court. "A motion for judgment on the pleadings tests the sufficiency of a complaint and is restricted solely to the allegations in the pleadings." *Gilman v. Physna, LLC*, 1st Dist. Hamilton No. C-200457, 2021-Ohio-3575, ¶ 14, citing *Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St.3d 574, 581, 752 N.E.2d 267 (2001). "The 'pleadings' consist of the complaint, the answer, and any attached written instruments." *Id.*, citing Civ.R. 7(A) and 10(C). Such a written instrument is not just any document attached to the complaint or answer, but specifically a document that " 'evidence[s] the parties' rights and obligations, such as negotiable instruments, "insurance policies, leases, deeds, promissory notes, and contracts." ' " *Id.*, quoting *State ex rel. Leneghan v. Husted*, 154 Ohio St.3d 60, 2018-Ohio-3361, 110 N.E.3d 1275, ¶ 17, quoting *Inskeep v. Burton*, 2d Dist. Champaign No. 2007 CA 11, 2008-Ohio-1982, ¶ 17.

{¶18}  Weidman urges us to take judicial notice of the minutes of the October 3 trustee meeting. Although the minutes were not attached to the complaint or answer, Weidman argues that the minutes are properly before the court because (1) the events of the October 3 meeting are central to the plaintiff's complaint and (2) we may take judicial notice of public records accessible via the Internet when considering a motion for judgment on the pleadings.

{¶19}  We hold that even if the minutes were attached to the complaint or answer, they would not be appropriate to consider. The minutes of the trustee meeting do not evidence the parties' rights and obligations. Rather, they set forth a view of the facts in dispute. They are not the kind of written instrument that we may consider as an attachment to the pleadings.

{¶20}  Further, insofar as we may take judicial notice of the minutes as a public record, the value of the minutes is limited. We have held that a court ruling on a motion for judgment on the pleadings may take judicial notice of "appropriate matters" without converting the motion to one for summary judgment. *Buchenroth v. City of Cincinnati*, 2019-Ohio-2560, 140 N.E.3d 114, ¶ 9 (1st Dist.). Such appropriate matters include those that are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned" and are "not subject to reasonable dispute." *Id.*, quoting Evid.R. 201(B).

{¶21}  The minutes of the trustee meeting are a public record. However, while "a court may take judicial notice of matters of public record, it may not take judicial notice of disputed facts stated in those public records." *McKenzie v. Davies*, 2d Dist. Montgomery No. 22932, 2009-Ohio-1960, ¶ 24. "A court cannot take judicial notice of a 'fact' that is controverted." *Id.* Thus, while we may take judicial notice of the

undisputed facts that a trustee meeting occurred on October 3, 2019, and that the matter of Morelia Group's offer was discussed, we cannot similarly accept as fact the statements made by Weidman and the law director merely because their utterance was captured in the meeting minutes.

{¶22} Accordingly, we accept the minutes as a public record of the October 3, 2019 meeting of the Sycamore Township Board of Trustees, but we decline to take notice of the disputed statements made at the meeting in support of Weidman's and Morelia Group's arguments.

### C. Political-Subdivision-Employee Immunity

{¶23} We turn now to the substance of Weidman's appeal. Weidman argues that his conduct at the October 3 trustee meeting was within the scope of his duties as a township trustee. Weidman also argues that his conduct was without malicious purpose or bad faith. Thus, he claims immunity from personal liability for his actions under Ohio's statutory immunity for political-subdivision employees, set forth in R.C. 2744.03(A)(6).

{¶24} R.C. 2744.03 provides broad immunity from civil suits for political subdivisions of the state and employees of political subdivisions. The suit must relate to an "act or omission in connection with a governmental or proprietary function." R.C. 2744.03(A). There is no dispute in this case that the challenged actions were in connection with a governmental function.

{¶25} The specific provision at issue, R.C. 2744.03(A)(6), delineates the scope of civil liability immunity for employees of political subdivisions. A township, such as Sycamore Township, is a political subdivision of the state within the meaning of R.C. Chapter 2744. R.C. 2744.01(F). An employee of a political subdivision includes an

elected official. R.C. 2744.01(B). Thus, the immunity offered by R.C. 2744.03(A)(6) generally applies to Weidman. Under R.C. 2744.03(A)(6), an employee of a political subdivision is immune from civil suit unless any one of the following exceptions applies:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.

R.C. 2744.03(A)(6)(a)-(c). In this case, there is no suggestion that division (c) applies.

{¶26} Weidman argues that the challenged action, preventing a favorable vote on Morelia Group's proposed purchase, was within the scope of his employment as a township trustee, and therefore the exception to immunity under R.C. 2744.03(A)(6)(a) is not triggered.

{¶27} However, where a state or political-subdivision employee's conduct is motivated by actual malice, it is outside the scope of employment. *See Jackson v. McDonald*, 144 Ohio App.3d 301, 307, 760 N.E.2d 24 (5th Dist.2001) ("It is only where the acts of the governmental employee are motivated by actual malice or other situations giving rise to punitive damages that their conduct may be outside the scope of their state employment."); *Curry v. Village of Blanchester*, 12th Dist. Clinton Nos. CA2009-08-010 and CA2009-08-012, 2010-Ohio-3368, ¶ 30 (same); *Drain v. Kosydar*, 54 Ohio St.2d 49, 56, 374 N.E.2d 1253 (1978) ("Where it is alleged that the

acts of a state employee were motivated by actual malice * * *, such conduct would certainly be outside the scope of state employment * * *.").

{¶28} Weidman argues that, even if Morelia Group's allegation of actual malice is true, his claim of a facially valid justification for his actions negates the effect of any malicious purpose or bad faith and therefore the exception to immunity under R.C. 2744.03(A)(6)(b) is not triggered.

{¶29} For the purposes of R.C. 2744.03, "malice" has been defined as " ' "the willful and intentional desire to harm another, usually seriously, through conduct which is *unlawful or unjustified*." ' " (Emphasis added.) *Martcheva v. Dayton Bd. of Edn.*, 2021-Ohio-3524, 179 N.E.3d 687, ¶ 81 (2d Dist.), quoting *Reno v. Centerville*, 2d Dist. Montgomery No. 20078, 2004-Ohio-781, ¶ 25, quoting *Moffitt v. Litteral*, 2d Dist. Montgomery No. 19154, 2002-Ohio-4973, ¶ 96. Likewise, "bad faith" has been defined as a "sinister motive that has *no reasonable justification*." (Emphasis added.) *Id.*, quoting *Moffitt* at ¶ 96.

{¶30} Applying those definitions, Weidman contends that his opposition to Morelia Group's proposal to buy the Development Property was appropriate and prudent at the October 3 trustee meeting. Weidman points out that the township's law director had identified specific reasons that any board action at that time would be premature. Additionally, Weidman notes that Morelia Group's proposed purchase price was exactly what the township had paid for the land when buying the parcels piecemeal. Both Weidman and the law director expressed their concern at the trustee meeting that the value of the entire Development Property could substantially exceed that amount.

{¶31} At the pleading stage, we are constrained to credit as true Morelia

Group's factual allegations. Morelia Group has alleged a personal history of bad feelings between Hildebrant and Weidman, which permits an inference that Weidman harbored an intent to harm Hildebrant professionally by sabotaging Morelia Group's business opportunity. Following the "no set of facts" standard, we conclude that Morelia Group has set forth sufficient allegations to pierce Weidman's statutory immunity.

{¶32} Although reasonable justification for Weidman's actions may ultimately serve to disprove malice or bad faith, Morelia Group pled that Weidman's opposition to the purchase offer was pretextual and that despite the purported justification for Weidman's opposition, the other township trustees were in favor of accepting Morelia Group's offer. Because we are unable to take judicial notice of the contents of the October 3 meeting minutes as conclusively proving the truth of the disputed contents, we are unable to credit as fact Weidman's claim of justification. Because we must, at the pleading stage, make all favorable inferences against the moving party, we infer from Morelia Group's claim that the other trustees favored Morelia Group's offer and that Weidman's purported justifications were invalid and pretextual grounds upon which to refuse to consider the offer.

{¶33} We therefore conclude that Morelia Group has pled sufficient facts to overcome Weidman's claim of immunity under R.C. 2744.03(A)(6).

### D. Qualified Privilege

{¶34} In addition to his claim of civil immunity as a political-subdivision employee under R.C. 2744.03(A)(6), Weidman claims that he is also entitled to immunity from Morelia Group's tortious-interference claim under the common law doctrine of "qualified privilege." Weidman claims that his justification for the

challenged actions creates a qualified privilege, which is a form of common law immunity. Weidman claims that this court has jurisdiction to decide this issue pursuant to R.C. 2744.02(C).

**{¶35}** Morelia Group responds that the defense of qualified privilege challenges the merits of the tortious-interference claim and does not provide immunity from suit. Thus, Morelia Group argues that we are without jurisdiction to review this issue on this interlocutory appeal. We agree.

**{¶36}** "Qualified privilege" has been recognized by Ohio courts as a defense to both defamation and tortious-interference claims. *Smith v. Ameriflora 1992*, 96 Ohio App.3d 179, 187, 644 N.E.2d 1038 (10th Dist.1994). Qualified privilege does not provide immunity from suit, but rather it is an attack on the merits of a defamation or tortious-interference claim. Thus, we are without jurisdiction to consider the issue on interlocutory appeal.

**{¶37}** Even if we agreed with Weidman's characterization of qualified privilege as a common law immunity, we would still lack jurisdiction over this issue. R.C. 2744.02(C) states, "An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or *any other provision of the law* is a final order." (Emphasis added.) Weidman claims that the common law is included in the definition of "law" under R.C. Chapter 2744. We disagree with this interpretation.

**{¶38}** R.C. Chapter 2744's definition of "law" states as follows:

"Law" means any provision of the constitution, statutes, or rules of the

United States or of this state; provisions of charters, ordinances,

resolutions, and rules of political subdivisions; and written policies

adopted by boards of education. When used in connection with the 'common law,' this definition does not apply.

R.C. 2744.01(D).

**{¶39}** The term "rule" is not expressly defined, but we observe that, " '[r]ule' includes regulation." R.C. 1.59(F). This suggests that "rule" means something akin to the Ohio Administrative Code or the Rules of Court. No other term in R.C. 2744.01(D) could encompass the common law within its meaning. Thus, we conclude that "law," in the context of R.C. Chapter 2744, does not include the common law. In doing so, we agree with the analysis in Judge Belfance's dissenting opinion in *Buck v. Village of Reminderville*, 9th Dist. Summit No. 27002, 2014-Ohio-1389, ¶ 24-25 (Belfance, J., dissenting). *Accord City of Cleveland v. Graham*, 8th Dist. Cuyahoga No. 108232, 2020-Ohio-379, ¶ 15 ("R.C. 2744.01(D) specifically states, '[w]hen used in connection with the "common law," this definition does not apply.' Thus, Graham's common law claim of immunity is not based on 'any other provision of law.' "). *But see Marcum v. Rice*, 10th Dist. Franklin Nos. 98AP-717, 98AP-718, 98AP-719 and 98AP-721, 1998 Ohio App. LEXIS 5385, 6-8 (Nov. 3, 1998) (concluding that R.C. 2744.01(D) includes "common law" within the definition of "law" because the term "rules" encompasses the decisions of state courts); *Buck* at ¶ 6 (following *Marcum*).

**{¶40}** R.C. 2744.02(C) includes as a final, appealable order those orders denying immunity to an employee of a political subdivision under R.C. Chapter 2744 or "any other provision of law." Because we conclude that "law," in this context, excludes the common law, an order denying an alleged immunity arising from the common law is not a final, appealable order, and we are without jurisdiction to consider the issue on interlocutory appeal.

{¶**41**} We conclude that under either Weidman's or Morelia Group's interpretation of Weidman's qualified-privilege claim, we do not have jurisdiction under R.C. 2744.02(C) to consider the issue at this time.

### *IV. Conclusion*

{¶**42**} The trial court properly denied Weidman's motion for judgment on the pleadings. Accordingly, we overrule Weidman's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**BERGERON, P.J.**, and **BOCK, J.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.